Gants, J.
The plaintiff, Blake Bisson (“Bisson”), was hired by the defendant Ptech, Inc. (“Ptech”) in July 2001 as its Vice President of Sales, and worked in that position from July 30, 2001 to December 17, 2002, when he was laid off. Two days after he was laid off, on December 19, 2002, he filed the instant law suit against:
Ptech;
Oussama Ziade (“Ziade”), its Chief Executive Officer;
George Peterson (“Peterson”), who served as Ptech’s Chief Financial Officer and, later, its Chief Operating Officer; and
Al Montross (“Montross”) and M. Yaquib Mirza (“Mirza”), who served as outside directors on Ptech’s Board of Directors when Bisson worked at Ptech and continued to serve until September 2002.
Bisson alleges that each of the defendants are liable under the Wage Act, G.L.c. 149, §148 for wages and commissions he earned that have yet to be paid. He also alleges that Ptech (but not the individual defendants) are liable to him for damages arising from breach of his employment contract or, in the alternative, for quantum meruit damages arising from work he performed for which he was never paid.[1]
Montross and Mirza have moved for summary judgment on the Wage Act claim against them, and Bisson *418 has cross moved for summary judgment against them. Bisson has also moved for summary judgment against Ptech as to all claims, and against Ziade and Peterson as to the Wage Act claim. This Court will address the various motions separately.
Motion for Summary Judgment against Ptech and Peterson
Ptech and Peterson have failed to oppose summary judgment, either in writing or by appearing at the summary judgment hearing.[2] Therefore, Bisson’s motion for summary judgment against Ptech and Peterson is ALLOWED as to liability. An assessment of damages hearing shall be scheduled to determine the amount of damages on each claim.
Cross Motions for Summary Judgment involving Montross and Mirza
Under G.L.c. 149, §148 of the Wage Act, “(t]he president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section,” and therefore are jointly and severally liable with the corporation for the payment of the unpaid wages. G.L.c. 149, §148 (emphasis added). There is no dispute that Montross and Mirza were outside directors of Ptech and were never officers or employees of that corporation. Bisson contends that they are still jointly and severally liable for his unpaid wages because, as a result of their involvement in the management of Ptech, they were “agents having the management of such corporation” within the meaning of the Wage Act.
Viewing the evidence in the light most favorable to Bisson, as this Court must in considering a motion for summary judgment, Montross and Mirza were the two outside directors on athree-person Board of Directors; Ziade served as the third board member, while also serving as Chief Executive Officer. The only compensation Montross and Mirza received for their service on the Board was 150,000 options to purchase shares of Ptech. During the time that Bisson served as Vice President for Sales, Montross and Mirza took affirmative steps to rescue Ptech from its dire financial circumstances. When they learned that Peterson had failed to forward to the appropriate tax authorities the amount deducted from wages for income tax withholding and had also failed to invest the amounts withheld from wages for 401 (k) contributions, they directed that this illegal practice stop and participated in the decision to fire Peterson. They also assisted Ziade in formulating business plans that were provided to venture capitalists from whom they hoped to obtain needed capital and contacted numerous potential investors to explore whether they would be interested in investing in Ptech. They also assisted Bisson in his efforts to generate sales by offering advice, critiquing salesmen on their presentations, and using Montross’ contacts at IBM in an attempt to seal a deal with that company. At least monthly, they met with Ziade to discuss outstanding issues regarding Ptech’s overall business strategy and day-to-day management. They never, however, were formally appointed by the Board to serve as Ptech’s agent in any matter.
While this Court accepts as true Bisson’s contention that Montross and Mirza actively participated in various matters regarding the management of Ptech, this Court does not find that this active participation makes them “agents having the management of such corporation” within the meaning of the Wage Act. In interpreting this phrase, which apparently has yet to be interpreted by any appellate authority, this Court is mindful of its practical consequence in the Wage Act — anyone deemed to be “agents having the management of such corporation” are individually liable for treble the wages found to be due under the Wage Act. See G.L.c. 149, §§148 and 150. If any officer or agent who actively participated in a corporation’s management were to fall within this definition, then eveiy corporate vice-president and untold other officers and employees would be personally liable for their corporation’s failure timely to pay wages to its employees. This Court does not believe that the Legislature intended by this language to impose personal liability on so many corporate employees. Rather, when one looks at the phrase “agents having the management of such corporation” in the context of the language it follows — "the president and treasurer of a corporation" — it appears that the Legislature intended to impose personal liability on the president and treasurer of a corporation, and on other agents who may not hold these formal titles, but whose actual responsibilities are functionally equivalent to those performed by a corporate president or treasurer. Phrased differently, the Legislature did not wish to allow the persons who performed the duties of the president and treasurer to be able to escape their obligations timely to pay wages under the Wage Act merely by giving themselves different titles or by avoiding any formal title. Here, even viewing the evidence in the light most favorable to Bisson, neither Montross or Mirza can reasonably be said to have effectively assumed the duties of the president or treasurer of Ptech.
There is a second and distinct reason why Montross and Mirza cannot be deemed “agents having the management of such corporation” within the meaning of the Wage Act — outside directors under the common law are not considered to be agents of the corporation unless they are specifically appointed as agents. See Restatement (Second) of Agency, §14C (1958). When the Legislature uses a legal term such as “agent” and does not define it, a court may “presume that its intent is to incorporate the common-law definition of that term, ‘unless the intent to alter it is clearly expressed.’ ” Commonwealth v. Stokes, 440 Mass. 741, 747 (2004), quoting Commonwealth v. Burke, 392 Mass. 688, 690 (1984), which quotes Commonwealth v. Knapp, 26 Mass. 496 (1830). Under the Restatement *419 (Second) of Agency, which generally reflects the common law of agency, “[n] either the board of directors nor an individual director ... is, as such, an agent of the corporation . . .” Restatement (Second) of Agency, §14C (1958). To be sure, an individual board member may be appointed an agent of the corporation, but the agency relationship then arises from his appointment, not from his position as a director. See Restatement (Second) of Agency, §14C comment b (1958). Indeed, any person, regardless of whether he is a director, may be appointed by the board or the corporate officers to serve as an agent of the corporation. As Comment b to the Restatement makes clear, an individual director “has no power of his own to act on the corporation’s behalf, but only as one of the body of directors acting as a board. Even when he acts as a member of the board, he does not act as an agent, but as one of the group which supervises the activities of the corporation.” Restatement (Second) of Agency, §14C comment b (1958). Therefore, regardless of how this Court interprets the phrase “having the management of such corporation,” this Court can infer that the Legislature, by limiting personal liability under the Wage Act to “agents” of the corporation, did not intend to impose personal liability on outside directors who have not been specifically appointed as agents.
For these reasons, this Court finds that neither Montross nor Mirza are “agents having the management of such corporation” within the meaning of the Wage Act, and therefore may not be held personally liable for any violations of the Wage Act by Ptech. Consequently, since the only claim against Montross and Mirza is under the Wage Act, their motion for summary judgment must be ALLOWED and Bisson’s motion for summary judgment against them must be DENIED.[3]
Bisson’s Motion for Summary Judgment Against Ziade
There is no dispute that Ziade served as the President of Ptech and therefore may be held personally liable for any violation of the Wage Act that occurred on his watch. There are, however, genuine issues of material fact as to whether Bisson was indeed illegally deprived of wages or commissions during his employment at Ptech and, if so, the amount of wages or commissions that is due. Those issues make summary judgment inappropriate as to Ziade. Consequently, Bisson’s motion for summary judgment as to Ziade is DENIED.[4]
ORDER
For the reasons stated above, this Court ORDERS that:
1.Bisson’s motion for summary judgment against Ptech and Peterson is ALLOWED as to liability. An assessment of damages hearing shall be scheduled to determine the amount of damages on each claim.
2. The motion for summary judgment brought by Montross and Mirza is ALLOWED. Bisson’s cross motion for summary judgment against them is DENIED.
3. Bisson’s motion for summary judgment as to Ziade is DENIED.

In his complaint, Bisson also sought damages for conversion and misrepresentation, but on July 2, 2003 he waived these claims as to all defendants.

Peterson is appearing pro se. Counsel initially entered an appearance on behalf of Ptech, but later moved to withdraw. On January 30, 2004, Judge John Cratsley allowed the attorneys’ motion to withdraw, and no new attorney has filed an appearance on its behalf. Therefore, a default should have entered against Ptech because a corporation may not represent itself in court without counsel. Since the consequence of a default is essentially the same as the allowance of the motion for summary judgment as to liability, this Court need not address the earlier absence of a default.

Since this Court grants Montross and Mirza summary judgment on this ground, it need not consider the other grounds they argued, including their jurisdictional argument.

This Court recognizes that there are differing Supertor Court decisions as to whether a Vice President for Sales earning Bisson’s salary is protected under the Wage Act and whether the type of commissions alleged to be due here are covered by the Act. This Court need not resolve those issues on summary judgment because Ziade has not filed a cross motion for summary judgment.