ROSS A. PANOS, PLAINTIFF v. TIMCO ENGINE CENTER, INC., DEFENDANT

No. COA08-1018

(Filed 16 June 2009)

**1. Appeal and Error— appealability—partial summary judgment—interlocutory order—avoidance of two trials—common facts**

Although plaintiff's appeal from the trial court's order granting partial summary judgment on plaintiff's claim under the N.C. Wage and Hour Act was from an interlocutory order, it affected the substantial right of avoiding two trials on the same issue and was immediately appealable. In the interest of judicial economy, the Court of Appeals also elected to review defendant's appeal of its trade secrets claim since it arose out of the same facts common to the remaining claims.

**2. Employer and Employee— North Carolina Wage and Hour Act—nonresident employee—phone calls to coworkers in this state**

The North Carolina Wage and Hour Act did not apply to a nonresident employee who worked primarily outside this state but communicated by phone daily with coworkers within this state. Nor was the nonresident employee entitled to the protection of the Wage and Hour Act because the employment agreement stipulated that it shall be governed by North Carolina Law.

PANOS v. TIMCO ENGINE CTR., INC.

[197 N.C. App. 510 (2009)]

**3. Trade Secrets— failure to show trade secret—spoliation of evidence**

  The trial court did not err by granting partial summary judgment in favor of plaintiff employee even though defendant contends plaintiff's actions constitute spoliation of the evidence which severely impeded defendant's ability to prove its claim under the North Carolina Trade Secrets Protection Act because: (1) a *prima facie* case does not exist without a showing of the trade secret the person against whom relief sought knows or should have known, N.C.G.S. § 66-155; (2) defendant cannot identify the specific information it argues constituted trade secrets and that it claims plaintiff misappropriated; and (3) it is improper to base the grant or denial of a motion for summary judgment on evidence of spoliation when an adverse inference is permissive and not mandatory.

  Appeal by Plaintiff and Defendant from order entered 6 June 2008 by Judge Catherine C. Eagles in Superior Court, Guilford County. Heard in the Court of Appeals 12 February 2009.

  *Hill Evans Jordan & Beatty, PLLC, by R. Thompson Wright and Benjamin D. Ridings, for Plaintiff.*

  *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Mack Sperling and Elizabeth V. LaFollette, for Defendant.*

STEPHENS, Judge.

*Factual Background and Procedural History*

  Timco Engine Center, Inc. ("Defendant") is in the business of servicing and repairing jet engines on commercial aircraft. Timco Aviation Services, Inc. ("Timco") is the parent company of Defendant, and has an office in Greensboro, North Carolina. Defendant is a Delaware corporation with its principal place of business in Oscoda, Michigan.

  Ross A. Panos ("Plaintiff") entered into an employment agreement with Defendant on 20 January 2005, under which Plaintiff was employed as a general manager for Defendant for a term of two years and a salary of $150,000 per year. Under the terms of the employment agreement, Defendant's early termination of Plaintiff's employment "without cause" required Defendant to pay Plaintiff his base salary of $150,000 for a period of twelve months following such termination. The employment agreement defines "cause" as

a determination by [Defendant's] Board of Directors that (i) Employee has breached of [sic] this Agreement, (ii) Employee has failed or refused to perform the duties and responsibilities required to be performed by Employee under the terms of this Agreement, (iii) Employee has acted with gross negligence or willful misconduct in the performance of his duties hereunder, (iv) Employee has committed an act of dishonesty affecting [Defendant] or committed an act constituting common law fraud or a felony, or (v) Employee has committed an act (other than the good faith exercise of his business judgment in the performance of his duties) that is reasonably likely to result in material harm or loss to [Defendant] or Parent or the reputation of [Defendant] or Parent.

The employment agreement also provides that it "shall be construed in accordance with and governed for all purposes by the laws of the State of North Carolina[.]"

During his employment with Defendant, Plaintiff maintained a residence in San Diego, California, and the facility that he managed was located in Oscoda, Michigan. Plaintiff's normal work routine consisted of two weeks working in Oscoda and then working from his residence in San Diego the third week. Gil West ("West"), Plaintiff's direct supervisor and president of Defendant, was based in Greensboro. Plaintiff participated in a conference call with West and other management in Greensboro on most weekdays. Plaintiff also attended quarterly management meetings in Greensboro. Plaintiff estimated that he came to North Carolina about eight or nine times a year, generally for one or two days on each visit.

Plaintiff testified at deposition that despite efficiencies and increased revenue enjoyed by Defendant during Plaintiff's tenure, West led Plaintiff to believe that Timco's Chief Operating Officer, Roy Rimmer ("Rimmer"), was looking for a way to terminate Plaintiff's employment prior to the expiration of Plaintiff's employment agreement. Thereafter, in December 2005, Plaintiff began searching for new employment by sending email correspondence through his corporate email account, some of which was sent to competitors of Defendant. Defendant claims that Plaintiff's actions constituted a breach of Plaintiff's contractual duty to "devote his full time and efforts to the service of [Defendant]."

Plaintiff claims that Rimmer requested that Plaintiff fly to Dallas-Fort Worth International Airport for a meeting on 29 December 2005.

According to Plaintiff, when he arrived at the airport, Rimmer handed him a letter stating that his employment with Defendant had been terminated "for cause." Defendant claims that it terminated Plaintiff because of Plaintiff's disloyalty in actively seeking other employment with Defendant's competitors. Defendant notes that it was inappropriate for Plaintiff to publicize to the marketplace that he would be departing from Defendant, and especially to do so by using his corporate email account. Plaintiff did not receive any further explanation, and the record does not contain any meeting minutes or other indication that Defendant's Board of Directors discussed Plaintiff's termination. After Plaintiff was terminated, no further investigation into whether Plaintiff was terminated "for cause" was undertaken by Defendant's Board of Directors.

Plaintiff's termination letter also informed Plaintiff that he should immediately return his company-issued computer. Before doing so, Plaintiff deleted all data from the computer's hard drive. This data included management information, wage information for employees, and other company information, most of which Plaintiff claimed existed on Defendant's central server. Plaintiff claims he deleted these files out of concern that someone not privy to information on the computer, such as company payroll information, might discover the privileged information. Defendant, however, argues that Plaintiff's conduct violated Defendant's code of ethical conduct, and that Plaintiff's actions constitute evidence spoliation which severely impaired Defendant's trade secrets claim against Plaintiff.

Based, *inter alia*, on Defendant's alleged breach of Plaintiff's employment agreement and alleged violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, Plaintiff filed a complaint against Defendant on 18 April 2006, seeking recovery of severance pay under the employment agreement. Defendant filed its answer and counterclaim on 26 June 2006, which included a claim under the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152. On 6 June 2008, following arguments of counsel and upon consideration of each party's evidence in support of their respective positions, the trial court entered an order granting partial summary judgment for each party. Specifically, the court determined that:

> [D]efendant is entitled to judgment as a matter of law with respect to . . . [P]laintiff's Second Claim for Relief (N.C. Wage and Hour Act), and the Third Claim for Relief (N.C. Gen. Stat. § 75-1, et seq.); . . . [and Plaintiff] is entitled to judgment as a matter of

law with respect to . . . [D]efendant's Second Cause of Action (North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152, et seq.) and . . . [D]efendant's Third Cause of Action (Temporary, Preliminary, and Permanent Injunctive Relief)[.][1]

The court denied Defendant's motion for summary judgment on Plaintiff's breach of contract claim and, likewise, denied Plaintiff's motion for summary judgment on Defendant's breach of contract counterclaim. Both parties appeal.

*Standard of Review*

Our Court reviews *de novo* a trial court's ruling on a motion for summary judgment. *Edwards v. GE Lighting Sys., Inc.*, 193 N.C. App. 578, 581, 668 S.E.2d 114, 116 (2008). Where a trial court has granted a motion for summary judgment, "the two critical questions on appeal are whether, on the basis of the materials presented to the trial court, (1) there is no genuine issue of material fact, and (2) the moving party is entitled to judgment as a matter of law." *Nationwide Mut. Fire Ins. Co. v. Mnatsakanov*, 191 N.C. App. 802, 805, 664 S.E.2d 13, 15 (2008). The evidence must be viewed in the light most favorable to the non-moving party. *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998).

**[1]** The trial court's order granting partial summary judgment for each party is an interlocutory order. " 'An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.' " *North Iredell Neighbors for Rural Life v. Iredell Cty.*, 196 N.C. App. 68, 72, 674 S.E.2d 436, 439 (2009) (quoting *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950), *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950)).

[A]n interlocutory order is immediately appealable only under two circumstances. First, if the order or judgment is final as to some but not all of the claims or parties, and the trial court certifies the case for appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), an immediate appeal will lie. . . . The other situation in which an immediate appeal may be taken from an interlocutory order is when the challenged order affects a substantial right of the appellant that would be lost without immediate review.

---

1. The parties do not assign as error the trial court's grant of summary judgment on Plaintiff's Section 75 claim and Defendant's Third Cause of Action on this appeal.

*Embler v. Embler*, 143 N.C. App. 162, 164-65, 545 S.E.2d 259, 261 (2001) (internal quotation marks and citations omitted). "A substantial right is one which will clearly be lost or irremediably adversely affected if the order is not reviewable before final judgment." *Id.* at 165, 545 S.E.2d at 262 (internal quotation marks and citations omitted). "The right to avoid the possibility of two trials on the same issues can be a substantial right that permits an appeal of an interlocutory order when there are issues of fact common to the claim appealed and remaining claims." *Allen v. Sea Gate Ass'n, Inc.*, 119 N.C. App. 761, 763, 460 S.E.2d 197, 199 (1995) (citation omitted).

Plaintiff's N.C. Wage and Hour Act claim arises out of Plaintiff's employment agreement with Defendant, as does Plaintiff's breach of contract claim, which remains before the trial court. If we dismiss Plaintiff's appeal with respect to the N.C. Wage and Hour Act claim and a later appeal is successful, Plaintiff will be required to present the same evidence of Defendant's breach of the employment agreement that he will present on his remaining breach of contract claim. Should this occur, the same evidence will be presented to different juries on the same factual issue, which could result in inconsistent verdicts. Thus, Plaintiff's appeal of the trial court's dismissal of his Second Claim for Relief under the N.C. Wage and Hour Act affects the substantial right of avoiding two trials on the same issues, and is properly before us. *See id.*

Also before us on appeal is Defendant's trade secrets claim. This claim does not involve the issue of Defendant's breach of the employment agreement, but it does arise out of the same facts common to the remaining claims. In the interests of judicial economy, we elect to also review Defendant's appeal. *See Robinson, Bradshaw & Hinson, P.A. v. Smith*, 139 N.C. App. 1, 9, 532 S.E.2d 815, 820 (2000) (where interlocutory order was not immediately appealable, our Court elected to review the defendants' appeal "in the interests of judicial economy and pursuant to our discretionary powers").

## Plaintiff's Appeal

[2] Plaintiff argues on appeal that the trial court erred in granting Defendant's motion for partial summary judgment because the North Carolina Wage and Hour Act applies to a nonresident employee who performs work in this State. *See* N.C. Gen. Stat. § 95-25.1 (2007). Specifically, Plaintiff argues this Act applies to the employment of (1) a resident of California (2) who managed a Michigan facility (3) for a corporation with an office in Greensboro, North Carolina, (4) where

the business required the employee to perform duties in North Carolina up to eighteen times per year, and (5) where the parties agreed that North Carolina law governed the employment agreement. We are not persuaded.

The Wage and Hour Act provides in pertinent part that:

(a) This Article shall be known and may be cited as the "Wage and Hour Act."

(b) The public policy of this State is declared as follows: The wage levels of employees, hours of labor, payment of earned wages, and the well-being of minors are subjects of concern requiring legislation to promote the general welfare of the people of the State without jeopardizing the competitive position of North Carolina business and industry. The General Assembly declares that the general welfare of the State requires the enactment of this law under the police power of the State.

N.C. Gen. Stat. § 95-25.1.

Our Court recently considered the applicability of the Wage and Hour Act to a nonresident employee working outside of North Carolina in the factually similar case, *Sawyer v. Market Am., Inc.*, 190 N.C. App. 791, 661 S.E.2d 750, *disc. review denied*, 362 N.C. 682, 670 S.E.2d 235 (2008). In *Sawyer*, the plaintiff, Sawyer, was an Oregon resident and was employed as an independent contractor by Market America, Inc. ("Market America"), a North Carolina corporation based in Greensboro, North Carolina. *Id.* at 793, 661 S.E.2d at 751. The parties met in Greensboro on 1 December 2004 and executed an independent contractor agreement which provided that North Carolina law should apply to disputes under the agreement. *Id.* at 792-93, 661 S.E.2d at 751-52. Sawyer performed services for Market America outside of North Carolina from December 2004 until his contract was terminated on 30 January 2006. *Id.* at 792, 661 S.E.2d at 752. Sawyer subsequently filed suit against Market America alleging violation of the Wage and Hour Act. *Id.* In granting summary judgment for Market America, the trial court ruled that "the North Carolina Wage [and] Hour Act does not apply to [Sawyer] as an individual who resides and *primarily* works outside of the State of North Carolina[.]" *Id.* (emphasis added). Our Court affirmed the ruling of the trial court, holding that the "Wage and Hour Act does not apply to the wage payment claims of a nonresident who neither lives nor works in North Carolina." *Id.* at 793, 661 S.E.2d at 753. We placed

emphasis on the trial court's ruling in *Sawyer* to note that it does not appear that Sawyer *never* worked in North Carolina, but rather that Sawyer *rarely* worked in North Carolina. *See id.*

The present case is nearly indistinguishable from the facts in *Sawyer*. Plaintiff is a nonresident, who worked primarily outside of the State of North Carolina, and whose employment agreement stipulated that North Carolina law was to apply. *See id.* at 792, 661 S.E.2d at 752. Plaintiff worked primarily in Michigan and spent at most eighteen days working within North Carolina. Indeed, the only distinguishing fact between *Sawyer* and the present case is the fact that Plaintiff participated in almost daily conference calls with Defendant's Greensboro, North Carolina office. Despite this factual difference, our analysis in the present case is properly informed by the analysis in *Sawyer*.

In *Sawyer*, we noted that "[t]he U.S. Supreme Court has long held that '[l]egislation is presumptively territorial and confined to limits over which the law-making power has jurisdiction.' " *Id.* at 796, 661 S.E.2d at 754 (quoting *Sandberg v. McDonald*, 248 U.S. 185, 195, 63 L. Ed. 200, 204 (1918) (citations omitted)). Our own Supreme Court has echoed this sentiment:

> The law is unmistakably clear that the Legislature has no power to enact statutes, even though in general words, that can extend in their operation and effect beyond the territory of the sovereignty from which the statute emanates . . . . *Prima facie*, every statute is confined in its operation to the persons, property, rights, or contracts, which are within the territorial jurisdiction of the legislature which enacted it. The presumption is always against any intention to attempt giving to the act an extraterritorial operation and effect . . . . No presumption arises, from a failure of the state through its legislative authority to speak on the subject, that the state intends to grant any right, privilege, or authority under its laws to be exercised beyond its jurisdiction.

*McCullough v. Scott*, 182 N.C. 865, 877-78, 109 S.E. 789, 796 (1921) (citations omitted). Therefore, we must decide if an individual who does not live within the State and who worked primarily outside the State, but communicated daily with co-workers within the State, is within the jurisdiction of the Wage and Hour Act. *See id.* In other words, is the fact that Plaintiff participated in daily conference calls with Defendant's Greensboro, North Carolina office enough to allow Plaintiff the protection of the Wage and Hour Act where he otherwise

would not have had this protection under *Sawyer*? We hold that it is not. A daily phone call to North Carolina is insufficient to bring Plaintiff within the protection of the Wage and Hour Act where he otherwise would not have had such protection.

Plaintiff also argues that he is entitled to the protection of the Wage and Hour Act because the employment agreement stipulates that it shall be governed by North Carolina law. We considered this argument in *Sawyer* where the parties had also contractually agreed that North Carolina law was to apply. In *Sawyer*, we applied "the substantive law of North Carolina to our determination of the territorial ambit of the North Carolina Wage and Hour Act[,]" and held "that the choice of law provision in the parties' contract, although it requires us to apply North Carolina law, does not change the limits or requirements of the North Carolina statutes thus applied." *Sawyer*, 190 N.C. App. at 795, 661 S.E.2d at 753. We are bound by our decision in *Sawyer* and hold that the choice of law provision in the employment agreement *sub judice* does not give extraterritorial application to the Wage and Hour Act. *See id.* Plaintiff's assignment of error is overruled.

## *Defendant's Appeal*

[3] Defendant argues the trial court erred in granting partial summary judgment for Plaintiff because Plaintiff's actions constituted spoliation of the evidence, which severely impeded Defendant's ability to prove its claim under the North Carolina Trade Secrets Protection Act ("TSPA").

Under the TSPA, a trade secret is

business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:

a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152(3) (2007). Under the TSPA, the owner of a trade secret may bring a civil action for the misappropriation of the trade secret. N.C. Gen. Stat. § 66-153 (2007). In order to survive a

motion for summary judgment, the nonmovant must allege sufficient facts to allow a reasonable finder of fact to conclude that the information at issue meets the two above stated requirements of a trade secret under N.C. Gen. Stat. § 66-152(3). *Wilmington Star-News, Inc. v. New Hanover Reg'l Med. Ctr., Inc.*, 125 N.C. App. 174, 180, 480 S.E.2d 53, 56 (1997) (In order to survive the defendant's motion for summary judgment, the plaintiff, a health maintenance organization operator, was required to show negotiated price lists were, in fact, trade secrets.).

A *prima facie* case of misappropriation of trade secrets is

established by the introduction of substantial evidence that the person against whom relief is sought both:

(1) Knows or should have known of the trade secret; and

(2) Has had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner.

N.C. Gen. Stat. § 66-155 (2007). Thus, a *prima facie* case does not exist without a showing of the trade secret the person against whom relief is sought knows or should have known. *See* N.C. Gen. Stat. § 66-155. Summary judgment should be granted upon the nonmovant's failure to identify that information which it claims to be a trade secret that was misappropriated.

Defendant argues Plaintiff violated the TSPA by "wrongfully misappropriating and using [Defendant's] trade secrets[.]" Because Plaintiff deleted all of the information stored on his company-issued computer, Defendant was unable to identify the trade secret information that Plaintiff allegedly improperly used.

Elizabeth MeHaffey ("MeHaffey"), the Executive Vice President and general counsel to Timco, testified as follows when asked at a deposition which trade secrets Plaintiff allegedly misappropriated:

He—I don't know what he shared with anyone else. All I know is that he offered to share at least [Defendant's] business with— information with third parties, including our customers' vendors and what we consider to be competitors. I also—he's told us that he retained or didn't return to us proprietary information that was on a company computer. I don't know what he did with that information. I don't even know—he wouldn't tell us what the scope of that information was, so—

MeHaffey also testified that Plaintiff referred to improvements he had made to Defendant's business practice and shop processes in his resume and correspondence with potential employers. According to MeHaffey, Defendant interpreted these references as an offer by Plaintiff "to bring that to whoever his next employer is." Finally, MeHaffey provided the following response when asked to identify the harm Defendant suffered as a result of Plaintiff's actions:

A. We believe that our reputation was harmed. We believe that there was—because of the results, what would have had to happen when he was doing this, the termination of his employment, that the shop was harmed from that.

Q. The shop was harmed because of what?

A. Because of the turnover there that had to occur.

Q. Because [Plaintiff] was no longer working there?

A. Because he breached his employment agreement and we couldn't have somebody continuing to do that.

Q. Okay. So whatever he had done businesswise when you decided to fire him, that was harm because you had to fire him; is that what you're saying?

A. I think it was a—it was a disruption to the shop, certainly. I think—we lost credibility in the market.

Q. And that was because you fired [Plaintiff]?

A. No. Because [Plaintiff] is out shopping, telling how his mission is complete, while we're holding him out on our web site as our GM.

Q. And credibility in the market, specifically to whom do you feel like—can you identify anybody specifically that you feel like you lost credibility with?

A. I don't know. You know, I'm not the person most knowledgeable about what customers have said.

Defendant cannot identify the specific information which it argues constituted trade secrets and that it claims Plaintiff misappropriated. Accordingly, Defendant has not established a *prima facie* case that Plaintiff misappropriated trade secrets.

Defendant argues that its inability to establish a *prima facie* case on its trade secrets cause of action was caused by Plaintiff's miscon-

duct. Specifically, Defendant contends that Plaintiff's conduct in erasing his company-issued computer's hard drive constitutes evidence spoliation. The remedy for Plaintiff's misconduct, according to Defendant, should be the creation of a "presumption that the destroyed evidence goes to the merits of the case and *that the evidence was adverse to the party that destroyed it.*" Accordingly, Defendant asserts it should be presumed that (1) the destroyed records were relevant to Defendant's case, (2) the destroyed information was confidential and proprietary, and (3) Plaintiff misappropriated the data involved.

"The spoliation doctrine recognizes that where a party fails to produce certain evidence relevant to the litigation, the finder of fact may infer that the party destroyed the evidence because the evidence was harmful to its case." *Outlaw v. Johnson*, 190 N.C. App. 233, 244, 660 S.E.2d 550, 559 (2008). Defendant argues that the evidentiary inference allowed by the spoliation doctrine should apply in this case so as to permit the specific inference that the information erased from Plaintiff's hard drive constituted trade secrets and that Plaintiff misappropriated that information. We cannot agree.

Although spoliation of evidence permits an inference that the destroyed evidence was unfavorable to the party that destroyed it, the inference does not

["]supply the place of evidence of material facts and does not shift the burden of proof so as to relieve the party upon whom it rests of the necessity of establishing a prima facie case, although it may turn the scale when the evidence is closely balanced.["]

*McLain v. Taco Bell Corp.*, 137 N.C. App. 179, 183-84, 527 S.E.2d 712, 716 (quoting *Doty v. Wheeler*, 120 Conn. 672, 182 A. 468, 471 (1936)), *disc. review denied*, 352 N.C. 357, 544 S.E.2d 563 (2000). Furthermore, the adverse inference " 'is permissive, not mandatory.' " *Id.* at 185, 527 S.E.2d at 717 (quoting *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1159 (1st Cir. 1996)). "For this reason, it is improper to base the grant or denial of a motion for summary judgment on evidence of spoliation. It is not an issue to be decided as a matter of law, and cannot, by its mere existence, be determinative of a claim." *Sunset Beach Dev., LLC v. AMEC, Inc.*, 196 N.C. App. 202, 220, 675 S.E.2d 46, 58 (2009).

In *Hawley v. Cash*, 155 N.C. App. 580, 574 S.E.2d 684 (2002), this Court considered the applicability of the spoliation doctrine to a

plaintiff's claim for punitive damages. In *Hawley*, the "plaintiff appealed the trial court's granting of defendants' motion for partial summary judgment on plaintiff's punitive damages claim[,]" and argued that the defendants' alleged spoliation of evidence prevented him from proving his claim. *Id.* at 586, 574 S.E.2d at 688. We affirmed the order of the trial court, noting that the "[p]laintiff did not forecast any evidence that would have supported a punitive damages claim. Further, [the] plaintiff points to nothing that might be contained in the discovery material he claims was inappropriately destroyed which would support such a claim." *Id.* at 586, 574 S.E.2d at 688.

Likewise, in the present case, Defendant has not identified any information destroyed by Plaintiff that could support a claim of misappropriation of trade secrets. Defendant has produced no evidence that Plaintiff misappropriated any trade secrets, nor has Defendant produced evidence of any damages incurred as a result of the alleged misappropriation. Because Defendant has presented no independent evidence to establish or support its TSPA claim, the trial court did not err in granting Plaintiff's motion for summary judgment on this claim. Defendant's assignment of error is overruled.

As to each party's appeal, the order of the trial court is

AFFIRMED.

Judges STEELMAN and GEER concur.