Fremont-Smith, Thayer, J.
Plaintiff Kevin Hadfield (“Hadfield”) worked for defendant A.W. Chesterton (“Chesterton”) from 1985 to 2007, at which time he resigned and asked for payment for his unused accrued vacation time. Chesterton refused to pay Had-field for his earned vacation time, and Hadfield brought the following claims against Chesterton and several of its employees (collectively, “defendants”): (1) violation of the Massachusetts Wage Act, G.L.c. 149, §148 (“Wage Act”); and (2) breach of contract. Defendants now move the Court to dismiss Hadfield’s claims. For the following reasons, the defendants’ motion is ALLOWED as to both of Hadfield’s claims.
BACKGROUND
The facts as alleged in the complaint are as follows. Chesterton employed Hadfield, a resident of Australia, as a sales manager in sub-Saharan Africa from 1985 through late-2007. Upon his hiring, Hadfield signed an employment agreement which included the following provision: “This Agreement shall be construed in accordance with and governed by the laws of the Commonwealth of Massachusetts . . .” Chesterton required Hadfield to travel to its Massachusetts office numerous times during the approximately twelve years it employed him. During his employment, Hadfield accrued vacation time each year based on his seniority, very little of which Hadfield used. Hadfield believed his accrued vacation time carried over from year to year.
In November 2007, Hadfield submitted his resignation and requested that Chesterton pay out his earned vacation time, pursuant to an agreement he alleges to have entered into with Chesterton. In response, Chesterton asserted it had changed its vacation policy in 1996 so that vacation time could not be carried over from year to year, a change of which Hadfield had not previously been made aware. Hadfield communicated on numerous occasions with Chesterton’s director of human resources, who is based in Woburn, Massachusetts, regarding his earned vacation time. The decision not to pay out Hadfield’s earned vacation time was made by Chesterton human resources personnel and company officials employed at its Woburn place of business. Pursuant to G.L.c. 149, §150, Hadfield first filed a complaint with the Massachusetts Office of the Attorney General, which authorized a private claim against Chesterton. This suit followed.
DISCUSSION
In considering a motion brought pursuant to Mass.R.Civ.P. 12(b)(1) or (6), the Court “accept[s] the factual allegations in the plaintiffl’s] complaint, as well as any favorable inferences reasonably drawn from them, as true.” Ginther v. Commissioner of Ins., 427 Mass. 319, 322 (1998). Accepting Hadfield’s allegations as true, it is apparent that Hadfield’s work for Chesterton occurred in sub-Saharan Africa, with numerous trips to visit Chesterton’s Massachusetts headquarters and, towards the end ofhis employment, phone calls with Chesterton’s director of human resources, based in Massachusetts. The first question for this Court to decide, therefore, is whether the Wage Act applies to an employee whose employment predominantly takes place not only outside Massachusetts, but outside the United States.[2] The Court decides that it does not.
Generally, statutes are presumed not to apply ex-traterritorially unless there is clear legislative intent to the contrary. See Mitchell v. Abercrombie & Fitch, 2005 WL 1159412, at *2 (S.D.Ohio May 17, 2005); Doricent v. American Airlines, Inc., 1993 WL 437670, at *8 (D.Mass. Oct. 19, 1993); Rathje v. Scotia Prince Cruises, Ltd., 2001 WL 1636961, at *9 (D.Me. Dec. 20, 2001). The Court has found no legislative intent to rebut the presumption that the Wage Act does not apply outside Massachusetts. The language of neither G.L.c. 149, §148, nor G.L.c. 149, §150 makes any mention of extraterritorial application. See Doricent, 1993 WL 437670, at *8 (examining language of Massachusetts civil rights statute and concluding no indication of extraterritorial application). Further, that G.L.c. 149, §150, requires a plaintiff to first file a complaint with the attorney general’s office and provides that a plaintiff may seek injunctive relief strongly suggest that extraterritorial application of the Wage Act is impracticable, indicating a lack of legislative intent for such application. See Doricent, 1993 WL 437670, at *8 (concluding Massachusetts civil rights act’s provision for injunctive relief indicates lack of intent regarding extraterritorial reach because injunction only valid within Massachusetts). Finally, Had- *102 field has not directed the Court to any legislative history suggesting the Legislature intended extraterritorial application of the Wage Act. See Williams v. Episcopal Diocese of Mass., 436 Mass. 574, 577 n.2 (2002) (noting “under a rule 12(b)(1) motion, a plaintiff bears the burden of proving jurisdictional facts”).
Hadfield attempts to avoid the presumption against extraterritoriality by arguing that (1) the conduct vio-lative of the Wage Act — the decision not to pay Hadfield his earned vacation time — occurred in Massachusetts, thereby rendering application of the Wage Act territorial, and (2) his employment agreement includes a choice of law provision requiring application of Massachusetts law to his claims. Regarding Hadfield’s first argument, several other courts applying state wage statutes have found that it is the site of the plaintiffs work that determines where the relevant conduct occurred, not where managerial decisions are made. See Privanto v. M/S Amsterdam, 2009 WL 175739, at *7 (C.D.Cal. Jan. 23, 2009) (“Courts interpreting other states’ wage laws have . . . focused on the situs of an employee’s work in determining if a wage law applies, not where managerial decisions, actions, or inactions occur”); Mitchell, 2005 WL 1159412, at *3-4 (declining to apply Ohio wage statute to plaintiff who worked in Pennsylvania, despite plaintiff s allegation that wrongful decision not to pay overtime occurred in Ohio). In the absence of any guidance from Massachusetts courts on this subject, the decisions cited above, which are directly on point, persuade the Court to conclude that the relevant conduct to which the Wage Act applies is Hadfield’s work in sub-Saharan Africa, not the Massachusetts-based decision not to pay Had-field his accrued vacation time.[3]
Regarding Hadfield’s second argument, that the Court should defer to the choice of Massachusetts law contained in Hadfield’s employment agreement, the Court concludes that the choice of law provision does not affect applicability of the Wage Act. First, while Hadfield and Chesterton agreed Massachusetts law would apply to the employment agreement, Hadfield does not dispute that his employment agreement does not provide for accrual of vacation time or Chesterton’s obligation to pay Hadfield for such time upon his departure. Thus, Massachusetts law does not apply to Hadfield’s Wage Act claim by virtue of the agreement’s choice of law provision. Second, courts of other jurisdictions have held that contractual choice of law provisions do not defeat the presumption against extraterritorial application of state wage statutes. See Sawyer v. Market America, Inc., 190 N.C.App. 791, 794-95 (2008) (rejecting plaintiffs choice of law argument regarding wage statute), rev. denied, 362 N.C. 682 (2008); Vendetti v. Compass Environment, Inc., No. 1006-CV-3556, at *5 (E.D.Ill. Oct. 25, 2006) (finding plaintiffs wage statute choice of law argument unpersuasive, stating plaintiff “apparently mistakes a question of statutory applicability for a choice of law issue”); cf. Highway Equip. Co. v. Caterpillar, Inc., 908 F.2d 60, 63 (6th Cir. 1990) (rejecting plaintiffs argument that choice of law provision mandated application of Illinois franchise statute to dealership outside Illinois). Again, without guidance from Massachusetts courts, the Court is persuaded by the decisions cited above and concludes that the choice of law provision contained in Hadfield’s employment agreement does not rebut the presumption against extraterritoriality of the Wage Act.
Because Hadfield has failed to persuade the Court that the Wage Act should be applied to his employment with Chesterton, which took place in sub-Saharan Africa, his Wage Act claim must be dismissed for lack of subject matter jurisdiction pursuant to Mass.R.Civ.P. 12(b)(1).
The Court next addresses defendants’ request to dismiss Hadfield’s breach of contract claim under Mass.R.Civ.P. 12(b)(6). To survive a Mass.R.Civ.P. 12(b)(6) motion to dismiss, a complaint must set forth the basis for the plaintiffs entitlement to relief with “more than labels and conclusions.” Iannacchino, 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While factual allegations need not be detailed, they “must be enough to raise a right to relief above the speculative level. . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .” Id. At the pleading stage, Mass.R.Civ.P. 12(b)(6) requires that the complaint set forth “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief . . .” Id., quoting Bell Atl. Corp., 550 U.S. at 557.
The Court finds that Hadfield’s factual allegations regarding his breach of contract claim are insufficient to survive the defendants’ Motion to Dismiss. Hadfield alleges that he and Chesterton “entered into an agreement whereby Chesterton agreed to pay Hadfield his earned vacation time.” First Amended Complaint, para. 35. He does not allege what form the agreement took (e .g., whether it was oral or written), when he and Chesterton entered into the agreement, where he and Chesterton entered into the agreement, or any other information that “plausibly suggest[s]” Chesterton agreed to pay Hadfield his earned vacation time. He alleges merely that, “During his employment, Hadfield believed that his vacation time could be carried over from year to year.” First Amended Complaint, para. 18. In short, Hadfield’s factual allegations amount to mere “labels and conclusions,” failing the Iannacchino standard. Accordingly, Hadfield’s breach of contract claim must be dismissed.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ Motion to Dismiss be ALLOWED with prejudice as to Count I. Unless Hadfield can, in good faith, allege in a third amended complaint filed within ten (10) days specific facts sufficient to meet *103 the test of Iannacchino, supra, Count II is also dismissed with prejudice.

'he Court notes that it did not locate any Massachusetts decisions addressing this issue.

The cases Hadfield cites to support his argument do not change the Court’s conclusion, as none address the extraterritoriality of state wage statutes. Additionally, the fact that Hadfield visited Chesterton’s headquarters in Woburn, Massachusetts numerous times and communicated with Chesterton’s director of human resources (who was based in Woburn) does not affect the Court’s conclusion. See Panos v. Timco Engine Center, Inc., 677 S.E.2d 868, 874 (N.C.Ct.App. 2009) (holding plaintiffs eighteen days working in state and daily conference calls with in-state employees did not bring him within state wage statute when he predominantly worked out of state); Rattye, 2001 WL 1636961, at *8 (framing issue as whether state wage statute applied to foreign seamen employed on ship “operated, at least in part, from that state’s ports” and answering no).