Lauriat, Peter M., J.
Russell Dow (“Dow”) filed this action against his former employers, Gregory Casale (“Casale”), James Strahle (“Strahle”) and Lawrence Baker (“Baker”) (collectively, the “defendants”), claiming a violation of the Massachusetts Wage Act, G.L.c. 149, §§148 and 150 (the “Wage Act”). Now before the court are the parties’ cross motions for summary judgment.[1] For the reasons set forth below, certain of the motions are allowed, and others are denied.
BACKGROUND
The parties have stipulated to the following facts. Beginning on January 3, 2006, Dow was employed as the sole salesperson by Starbak Communications, Inc., which became Gulfstream Media Corporation d/b/a Starbak on March 15, 2007, which became Starbak, Inc. on December 1, 2009.[2] The company’s *133 main business was developing and manufacturing video conference streaming software and hardware. From March 15, 2007 until February 5, 2010, Dow was Director of Sales.[3] At all relevant times Dow was a resident of Florida, although he had customers in at least thirly states, including between eleven and nineteen customers in Massachusetts. As part of his business activities, Dow traveled to at least twenty of those states, including Massachusetts, about twelve times in 2008 and eight or ten times in 2009. Unless required to visit a customer site, Dow could arid did work from home in Florida, contacting his customers by either telephone or email.
Starbak’s only office was located first in Newton, Massachusetts and later in Burlington, Massachusetts. Dow did not have a dedicated cubicle at either office, although he used the same cubicle when he was there. Dow’s business card identified his work address as 1201 Washington Street, Newton, MA 02465 and included Massachusetts telephone and fax numbers.[4] All paperwork related to Dow’s sales was generated in Massachusetts; all purchase orders from Dow’s customers were sent to Massachusetts; all invoices were sent from Massachusetts; and all payments were sent to Starbak in Massachusetts.
Casale was Starbak’s Chief Executive Officer from March 15, 2007 until the company’s demise; starting in April 2009, he also held the title of President and Treasurer. At all times, Dow reported to Casale in Massachusetts, speaking several times a week and communicating by email almost daily with respect to new products, product changes, sales promotions and trade shows, customer sales forecasts and complaints, and other subjects related to the sale of Starbak’s products.
Strahle was Starbak’s Chief Operating Officer from early 2008 until January 29, 2010; starting in May 2008 he worked for Starbak pursuant to a written agreement which identified him as an “Independent Consultant,” and outlined his responsibilities as “relating to Executive Management, Operations and Product Development or any other tasks or activities assigned.” He reported directly to Casale. Strahle was also a member of the company’s board of directors. Beginning on March 15, 2007, Baker was President, Chairman, Secretary and Treasurer of Starbak until he was removed from all offices on March 27, 2009.
Dow’s compensations consisted of an annual base salary, and commissions on his sales, governed by a written commission plan that provided for a commission rate of 10%, plus an accelerator of 2.07% once he achieved a quota in any given quarter. Half of his commission was paid when he booked a sale, the other half when the customer paid the invoice. Commissions were calculated each quarter and the “amount was then payable on a quarterly basis on the second pay period following the end of each quarter: April 30, July 31, October 31 and January 31.”
The first time Dow had unpaid commissions was on October 31, 2008, for commissions earned during the third quarter of 2008. It is undisputed that Dow earned commissions for the third and fourth quarters of 2008 for a total of $62,944.44. During the first quarter of 2009, Dow was paid $9,000 in addition to his base salary; during the second quarter of 2009 Dow was paid $47,500; during the third quarter he was paid $19,000. Left unpaid was $32,061.22 for the first quarter, $55,765.18 for the second quarter, and $2,772.73 for the third quarter for a total amount of $106,043.57. Dow was paid in full for the fourth quarter of 2009.
In October 2009, Casale told Dow that he would pay him interest at the rate of 1.3% on all outstanding commissions due. Nonetheless, at the time the company ceased business and terminated all employees on February 3, 2010, Dow claims he was owed a total of $138,957.19 in commissions, expenses and accrued vacation.[5] He filed this action claiming a violation of the Wage Act on April 1, 2010, seeking treble damages and attorneys fees and costs.[6] All parties have now moved for summary judgment on that claim.
DISCUSSION
Summary judgment will be granted where, viewing the evidence in the light most favorable to the non-moving party, all material facts have been established and the moving party is entitled to judgment as a matter of law. Cabot Corp. v. AVX Corp., 448 Mass. 629, 636-37 (2007); Mass.RCiv.P. 56(c). “The moving party must establish that there are no genuine issues of material fact, and that the nonmoving party has no reasonable expectation of proving an essential element of its case.” Miller v. Mooney, 431 Mass. 57, 60 (2000). See also Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
I.
The defendants advance several arguments in support of their respective positions. Casale contends that the Wage Act does not apply outside of Massachusetts and, because at all times Dow was a resident of Florida and worked outside of Massachusetts, he did not have sufficient contacts to enjoy its protections. Strahle asserts that as an independent consultant he did not have control over or management of the company so as to be personally liable under the Wage Act. Baker first claims that he cannot be held personally liable for any unpaid commissions that Dow earned after Baker’s termination in March 2009.[7] With respect to Dow’s 2008 commissions, Baker argues that they were, in effect, paid in full in the form of the partial commissions paid during the first three quarters of 2009. Alternatively, he argues that they had not been definitely determined to be due and payable at the time of his termination and that Dow cannot be granted summaiy judgment where there remains an issue of fact as to the amounts.
*134 Dow asserts that the language of the Wage Act, as well as the company’s policy, provide for the payment of both his commissions and accrued vacation time. Dow contends that because Casale was CEO, President and Treasurer of Starbak, and because Strahle had management responsibilities with respect to the company, they are personally liable under the Wage Act. As to Baker, Dow argues that any amount paid by the company for commissions Dow earned in 2009, that is, the partial payments, cannot be applied to the 2008 unpaid commissions. Otherwise put, those partial payments were, in effect, down payments towards the amounts due him in the quarter in which they were paid. Furthermore, he contends that the amounts due as of March 27, 2009, were computed by a simple formula and were thus definitely due and determined as of that date.
While the language of the Wage Act is hardly a model of legislative draftsmanship, its purpose is clear: “to prevent the unreasonable retention of wages.” Boston Police Patrolmen’s Ass’n, Inc. v. City of Boston, 435 Mass. 718, 720 (2002). “Wages” include periodic salary or wages, holiday or vacation payments due an employee under an oral or written contract,[8] and commissions that are definitely determined and have become due. G.L.c. 149, §148. An employer is defined as “the president and treasurer of a corporation and any officers or agents having the management of such corporation.” Id.
With respect to Casale’s argument that the Wage Act does not apply because Dow was at all times a resident of Florida, working a good portion of his time out of his home, the court is not persuaded. Casale relies primarily on Hadfield v. A.W. Chesterton Co., 26 Mass. L. Rptr. 101, 2009 Mass.Super. LEXIS 230 at *1 (Fremont-Smith, J.), for the proposition that statutes may not be applied extraterritorially unless there is a clear legislative intent to do so.
The court in Hadfield relied on cases from other jurisdictions interpreting their wage laws, as well as on Massachusetts cases interpreting other statutes. It concluded that there was “no legislative intent to rebut the presumption that the Wage Act does not apply outside of Massachusetts.” Id. at *2. However, because the plaintiff/employee in Hadfield was a resident of Australia working in sub-Saharan Africa, the court did not have occasion to address whether the Wage Act would apply if the employee were a resident of and/or worked in another state, rather than another country. Because courts interpreting other states’ wage acts focused on the situs of the work rather than where managerial decisions occurred, the court declined to apply the Wage Act.[9] In contrast, in Gonyou v. Tri-Wire Eng. Solutions, Inc., 717 F.Sup.2d 152 (D.Mass. 2010), upon which Dow relies, the United States District Court for the District of Massachusetts, interpreting G.L.c. 151, §1A, the Massachusetts overtime statute, concluded that it could be applied extraterritorially to a Massachusetts resident who worked in Connecticut for a Massachusetts company. Id. at 155.
Nothing in the language of G.L.c. 149, §148 restricts its coverage to an “employee” who is either a resident of or works in Massachusetts. Nor does the statute, with respect to private employers, identify whether it is the situs of the employer, the situs of the employee, or the situs of the work that determines whether the act applies.[10] Furthermore, this case presents a different factual scenario than either Hadfield or Gonyou. Here, the plaintiff is a resident of Florida who conducted his business largely via the internet (paid for by Starbak), but who also traveled throughout the United States, as salesmen are wont to do, in order to serve the company’s customers and further the company’s business. Even assuming that the applicability of the Wage Act turns on the situs of the work rather than on that of the employer, the court could conclude that Dow worked in any or all of the states, including Massachusetts and Florida, where his customers were located and where he visited. If the court were to consider applying the wage acts of all those jurisdictions, the result would be not only impractical but virtually impossible. Thus, the court is left, absent any guidance from our appellate courts on the issue, to fall back on a riff on the exercise of personal jurisdiction.
In O’Connell v. Chasdi, 400 Mass. 686 (1987), although the issue was not before the court, the Supreme Judicial Court considered whether Massachusetts law applied to conduct that occurred out of state, in that case a violation of the Massachusetts Civil Rights Act. The court noted that there were many Massachusetts contacts, including an employment relationship between the parties, which was particularly relevant to a claim under the Civil Rights Act. Id. at 689 n.3. See also Gonyou, 717 F.Sup.2d at 153 (“In fact, Massachusetts has applied its statutory law to conduct outside its borders if sufficient contacts with the Commonwealth exist, as they do here . . . Such an application is not obviously ‘extra-territorial’ in contravention of the interpretative canon”).
Here, although Dow was not a Massachusetts resident, his business address was in Massachusetts and his contact information was a Massachusetts telephone number and Massachusetts fax number. Many of his customers were in Massachusetts and he visited them at least twenty times in two years. He was in almost daily contact with Casale in Massachusetts. All paperwork with respect to Dow’s sales was sent from and returned to the company in Massachusetts. The court concludes, therefore, that Dow had more than sufficient contacts with Massachusetts to afford him the protection of the Wage Act. Certainly nothing in the statute itself limits its application in these circumstances, and the court is of the view that G.L.c. 149, §148 was designed to regulate the actions of Massachusetts employers, regardless of where their employ *135 ees work.[11] Therefore, with respect to Casale, summary judgment must enter in favor of Dow on the issue of liability.
II.
In addition to joining in the above argument, Strahle contends that as a matter of law he cannot be personally liable under the Wage Act since he was not an officer or agent involved in the management of Starbak. See G.L.c. 159, §148. While the Legislature has not precisely defined the applicable terms in the statute, the Supreme Judicial Court has concluded that “a manager is someone who controls, directs, and participates to a substantial degree in formulating and determining policy of a corporation.” Wiedmann v. The Bradford Group, Inc., 444 Mass. 698, 711 (2005). While merely holding a management role does not translate into controlling the policy of a company sufficient to impose liability under the statute, liability may be imposed to the extent that a person has responsibilities that are functionally equivalent to those of a president or treasurer.
Strahle’s responsibilities with respect to the company are far from clear; nonetheless, he was responsible for “product management, assessing of software for the company as we needed it, license software, dealing with the manufacturing, looking at new manufacturing facilities or new approaches or strategies for our product and then we were trying to grow the consulting services so consulting for clients.” And although he asserts that, as COO, he was “playing that role for [Casale] when we were communicating with the executives of our customers,” his business card identified him as COO, and he was so listed on both Starbak’s website and his own Linkedln page. Casale testified at his deposition that Strahle had a written agreement with Starbak to be its COO at an annual base salary of $130,000 with responsibilities that included participating in “product strategy discussions.”
The court concludes that a reasonable jury could find that, in a company that had but seven or eight employees, Strahle participated in and formulated its policies sufficient to bring him within the ambit of the statute.[12] That he was an “Independent Consultant” pursuant to the May 1, 2008, written agreement is of no moment where he was the COO. In addition, the language of the statute seems to indicate that the Legislature “did not wish to allow the persons who performed the duties of the president and treasurer to be able to escape their obligations timely to pay wages under the Wage Act merely by giving themselves different titles or by avoiding any formal title.” Bisson v. Ptech, 18 Mass. L. Rptr. 417, 2004 WL 2434638 at *2 (Oct. 19, 2004) (Gants, J.).[13] Dow’s claim against Strahle must therefore stand for trial.
Ill
As to Baker, his argument that Dow’s commissions were not definitely due and payable falls well short of the mark. At least as to the third and fourth quarters of 2008, while Baker was President and Treasurer of Starbak, there seems to be no dispute that Starbak owed Dow $62,944.44. His contention that payments made after he was terminated covered that amount and thus served to extinguish his liability is somewhat more nuanced. Dow testified that those payments were “kind of payments against the balance, and they were random.” When asked if they were to “catch up on what was owed you,” Dow answered in the affirmative. Nonetheless, the company carried the full amount on its books, with interest until January 2010. In a letter to the court after the Rule 56 hearing, Dow represents that, because the company continued to carry that debt, accruing interest, commission payments made in 2009 could not be allocated to the oldest payment due. Baker takes the position that carrying the full amount was merely “how the bookkeeper chose to calculate commissions many months after the fact of payments.” In any event, he argues that, as a former officer, his liability cannot be extended when sufficient payments were made.
The court agrees with Baker. That $62,944.44 was carried on the books until January 2010 more likely serves to calculate the interest owed under Casale’s agreement with Dow. Nothing in the record before the court would lead the court to conclude that payments made in 2009 could be allocated only to the commissions earned for those quarters. Baker’s obligations with respect to the unpaid commissions for the third and fourth quarter of2008 have thus been paid in full and he therefore cannot be held liable for a violation of the Wage Act.[14]
With respect to Dow’s claim for damages, in July of 2008, Chapter 80 of the Acts of 2008[15] became effective, making treble damages mandatory for, among other things, a violation of the Wage Act. G.L.c. 149, §150.[16] Because the relevant facts of this case occurred after Chapter 80 came into effect, the award of treble damages as well as attorneys fees and costs to a prevailing party is mandatory. Because Dow has asserted only a claim under the Wage Act, the amount of the award cannot include the 1.5% interest on unpaid commissions promised by Casale, which must be the subject of an independent cause of action. Futhermore, any partial payments of unpaid commission made to Dow must be deducted from the award of compensatory damages. Treble damages will be calculated based on the resulting amount.
ORDER
For the foregoing reasons, Plaintiff Russell Dow’s Motion for Summary Judgment with respect to Defendant Gregory Casale (Paper #19) is ALLOWED and Casale’s Cross Motion for Summary Judgment (Paper #21) is DENIED. Dow’s Motion for Summary Judg *136 ment with respect to Defendant James Strahle is DENIED; Strahle’s Cross Motion for Summary Judgment (Paper #22) is likewise DENIED. Dow’s Motion for Summary Judgment with respect to Defendant Lawrence Baker is DENIED; Baker’s Cross Motion for Summary Judgment (Paper #22) is ALLOWED.

These cross motions address solely Dow’s claim of a violation of the Wage Act. The parties have agreed to defer discovery on their cross claims and third-party claims pending the determination of Dow’s Wage Act claim.

The court will refer to all entities as “Starbak” or the “company” unless otherwise noted.

Starbak was placed in involuntary bankruptcy on January 29, 2010, and closed its doors on February 5, 2010.

Starbak did not issue any new business cards after it moved to Burlington.

Dow was paid his base salary until the date of termination.

General Laws c. 149, §148 provides, in pertinent part, that:
any employee discharged from such employment shall be paid in full on the day of his discharge ... The word ‘wages’ shall include any holiday or vacation payments due an employee under an oral or written agreement . . . This section shall apply, so far as apt, to the payment of commissions when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable to such employee, and commissions so determined and due such employees shall be subject to the provisions of section one hundred and fifty... No person shall by a special contract with an employee or by any other means exempt himself from this section or from section one hundred and fifty. The president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section.
General Laws, c. 149, §150 provides that “[a]n employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for any lost wages and other benefits and shall also be awarded the costs of the litigation and reasonable attorneys fees.”

Baker points out that commissions earned in the first quarter of 2009 (January through March) became payable on April 30, 2009, after he was removed. As to vacation or interest Dow claims he is owed, Baker argues they also did not become payable until after he was removed.

There is no dispute that Starbak’s handbook provides for vacation payments.

Relying on Hadpeld, the United States District Court for the District of Massachusetts concluded that the Wage Act applied because the plaintiff, an employee of a Maryland company, worked three days a week in Massachusetts. Telford v. Iron World Manufacturing, LLC, 680 F.Sup.2d 337, 342 (D.Mass. 2010).

But see Telford, 680 F.Sup.2d at 342.

 The court also notes that, in this age of the ubiquitous Blackberry, IPad and smartphone, any person can work in any location that has internet access. Were the court to accept Casale’s argument, the Wage Act would afford no protection to an employee who conducted the employer’s business anywhere but in Massachusetts. This is hardly consonant with the purpose of the Wage Act, since an employer could escape potential liability simply by requiring an employee to work, for example, across the border in New Hampshire. Furthermore, if Dow should assert a claim under Florida law, there is no evidence in the record that would support a Florida court’s exercise of personal jurisdiction over the defendants.

That Strahle was not involved in decisions with respect to hiring or employee compensation is not dispositive. The question is whether he was engaged in and making decisions with respect to the policies of the company.

Strahle also argues that he cannot be liable for the 1.5% interest on unpaid commissions that Casale offered to pay Dow, although he concurred in the decision, because interest is not recoverable under the Wage Act. The court agrees. To the extent that a jury finds Strahle liable, it would be only for the amount of the unpaid commissions. Any interest promised Dow is more properly the subject of a contractual claim under Casale’s agreement with Dow.

This is true as well for the remaining defendants. To the extent that they are liable for unpaid commissions, the amount must be determined taking into account the partial payments made in 2009.

“An Act Further Regulating Employee Compensation.”

Prior to the enactment of Chapter 80, treble damages could be awarded at the discretion of the judge. See, e.g., Weidmann v. The Bradford Group, 444 Mass. 698,710 (2005).